For the record again, my name is Martin Crowley, and I'm representing Dennis, also known as Sam Dehne. Mr. Dehne, as a retired lieutenant colonel in the Air Force, having served 26- Hey, we don't need the description of Mr. Dehne again. My point was going to be that he has a duty that he swore an oath to report to misconduct of public officials. He believes in that duty that he took at the Air Force Academy and as he entered into public service for those years defending our country. In June of 1999, Lt. Col. Dehne intended to point out that the mayor was not allowed to discuss airport business in council meetings due to his own business contract with the Reno Airport. Well, he initially signed up to speak on this matter. Yes, he did. Not for the purpose of discussing the mayor's improper conduct, but for the purpose of taking a position on the issue. Right, but when the agenda item came up and the mayor failed in his obligation that he had been ordered by the state ethics commissions to do, he changed his position of course. He didn't want to just speak on the matter. He wanted to point out that Mayor Griffin had violated a direct order of the ethics commission and the order of the ethics commission was very clear on this subject and it stated that it requires Mayor Griffin to disclose the full nature and extent of his company's contract with EDON prior to any Reno City Council action on its annual grant to EDON or any other matter involving EDON which may come before the council and abstain from voting on the matter and to disclose the full nature and extent of his company's contract with the airport authority whenever the Reno City Council is considering the matter pertaining to the airport authority including appointment of trustees and abstain from voting on those matters so long as there is a potential the airport authority could take further action on his company's contract. That's the directive and in the context of this is very appropriate too. They had been at an ethics commission meeting 12 days before this occurred. So here again we've got a public official who's bristling from a rebuke, a public rebuke of his conduct and then he sees Mr. Dene 12 days later and he's going to look for an opportunity to castigate him publicly and humiliate him and call him a clown on television. Is this the kind of meeting at which comments from members of the public normally are permitted to be made? Yes, absolutely. They have public comment on virtually every agenda item. Let me ask you a question about that. There's one section that lists the public comment items on the agenda. There's also apparently a rule that says the only time you may comment on an agenda item is when it is before the council. How do those two provisions work together? If there is an item that's not listed under a public comment item, but an item on which people wish to comment. The two provisions are such that the public comment period is simply reserved for making comments, things you want to address and say that they didn't get the snow off the streets here the day before yesterday and that's not on the agenda. You can make any comment, a public comment at the beginning, the public comment period on any subject, but you cannot make comment during that period on matters on the agenda item. You have to wait for the agenda item to be called and then you have to make comment. Are there items that are not subject to public comment? I believe that there are some that occur that way, but I'm not totally versed in the workings of the city council in that fashion. But Mr. Denea, of course, is more than well versed in that. He attends virtually every meeting and has done so for over six years as a city council, which is a better record than any councilman, mayor, or other citizen. A key fact is that Mr. Denea and Mr. Griffin had just had this run in 12 days before. Wasn't he ejected after he said, I demand the right to talk? Wasn't that when the ejection came? Yes. All right. Before that, hadn't they indicated they were going to vote on whether he could talk and they never gave him an opportunity to decide whether they were going to vote yes or no? Yes, you can talk. No, you can't talk. Right. So what has he lost? He demands something that they say that they may give to him, and then he starts starting what I would call a disruption and gets tossed out. No, Judge, what happened exactly at the moment where he said, I demand the right to speak, was right after Mayor Griffin stated, I'm going to continue this matter to this evening's meeting, because he had just been approached by the city attorney, who had just prior to that been approached by Mr. Denea and told her that Mr. Griffin was out of line, was not to be conducting this meeting or chairing this meeting concerning an airport matter. Where in the Constitution does it say you have a constitutional right to talk now rather than an hour later? Well, the problem is the mayor is already out of line. He's not supposed to be chairing this meeting. He's not supposed to be conducting the business regarding an airport matter, and he pointed that out quietly to the city attorney, who then brought it to the attention of the mayor. The mayor at that point had an obligation to remove himself. It sounds like that's, in a sense, exactly what happened. They took a break. He figured out what was supposed to happen, and he excused himself from the evening portion of it.  How is that a bad thing? Well, he made sure that he ejected Denea from the subsequent meeting, too, so he wouldn't be there for that discussion. Well, that's an interesting question, because the mayor does say you are removed for tonight, which sounds like it includes the subsequent session. But when the mayor was himself excused from the subsequent session, how effective was that? Should Mr. Denea have returned at 6 o'clock to determine whether he could then speak again, and what was there left to say if he'd accomplished what he'd accomplished? Well, how could he? For one, he wouldn't know since he had been ejected. He didn't know that he would be able to return, and he certainly wasn't re-invited by the mayor or any other person from the city to return to that night's meeting. But that's not even the point. The point is when he went to the city attorney and brought that to her attention, the mayor couldn't sit there and say, I'd like to continue this to tonight. His duty and obligation under the Ethics Commission order was to step back at that point. He's not allowed to think about it or read it or talk to the lawyer? He just do it instantly, or that's a First Amendment violation? He definitely should have stepped out. No, the First Amendment violation comes when he ejects him after he brought this to the public's attention, and he's trying to point out the Ethics Commission ruling and say, Mr. Mayor, you were told not less than 12 days ago that these are the things that you're supposed to do when an airport matter comes before this council and you're not doing it. But he doesn't get to say that because the mayor tells him, you're out of here. Somebody escort that clown out of here. And the mayor had no business discussing airport matters at all before the council, and he knew it. He knew what he was doing, and he knew he was violating the Ethics Commission ruling, and he knew when he ejected Diné that he was violating his constitutional right to free speech and to confront him on the issue publicly and on television. And Griffin was not going to let Diné get the better of him in front of the public, and that's what this case comes down to. You have just a little over two minutes if you want to save it for rebuttal. If the First Amendment doesn't apply to a citizen's right to complain in a public forum regarding an official's misconduct, then what good is the First Amendment? Our courts have respected the right of expression in very unusual forms, such as nude dancing, burning the flag, and grotesque artistic endeavors, just to name a few. I seriously doubt that our founding fathers had intended for those things to be protected by speech, but I'm certain that they were concerned about a citizen's ability to be able to publicly criticize officials without the fear of retribution and reprisal. And I would reserve my final minute and a half. We'll give you two minutes. Thank you. Good morning, Your Honors. My name is Craig Giscard, and I'm a deputy city attorney for the city of Reno, and representing the mayor and the city in this matter. The mayor or I guess the point here. Let's start off with Judge Graber's question, because you're probably in a better position to answer it. Is there a question as to whether this was an item on which the public had a right to comment? The public had a right to comment on the item. They can do that in the public comment section at the very beginning. On general items, they can do that at the agenda item itself. Your Honor, the circumstance was that there had just recently been a change in the rules that had set this sort of two-tiered system up, and so the council wasn't altogether familiar with the way it was working at that point. Is there any evidence at all whether normally the council takes a vote on whether citizens, each citizen is allowed to appear? Yeah, there was some evidence on Mayor Griffin's part at his deposition that indicated that that was something that was still being done. But I don't know of any indication. Excuse me. Yes, there have been votes on that, but there is no indication that anyone had been denied. You know, it could be denied, I suppose, but the point is that regardless of whether the mayor called for a vote or not, it's absolutely irrelevant when the vote never got to be taken, because if the vote could have been taken. Let me ask you about the vote never got to be taken. The discussion went after the mayor suggested that there be a vote. We can take a vote on it if you want, said Mayor Herndon, member Herndon. Then Mayor Griffin says, Mr. Denny, I'm addressing the issue, and he says he requested an opportunity to address it. I can take it whether or not it's appropriate. If you leave that to me, I'll say no, but I would defer to your wishes, he says to the council. Then a member says, I don't think it's a public hearing. Another member said, I don't think he adds anything to this, which is I find a rather odd way to decide what the citizens can speak on issues. But then you get to member Haschiff. He says, that's fine, whatever that's fine, which is that I don't think he brings anything to it. Then he says, that's fine. I think Dave Rigdon brings up a good point, and that is maybe send it, maybe a little different way at least, send a letter to them and ask what their thoughts are on the issues. Maybe they're in fact considering it. I don't know if the airport has any. It's like the county, talked about it for a long time before they made the decision. They're back to debating the merits. Your Honor, I've had the experience of sitting through many of those meetings, and they often jump all around and jump from one place to another and then get back to where they need to be to get something done. The fact that they don't immediately address that vote doesn't disturb me at all because frequently they could address that same vote on whether Mr. Dene could speak at a later point. We never got the opportunity to get back on track there. And with city councils, this happens all the time. They jump all over the place and then can come back to that point. They were never given that opportunity because of Mr. Dene's conduct. And that's essential. That's critical in this case. We will never know. One interpretation is your speculation that, gee, we'd moved on. But, Your Honor, with all due respect, that's all it is, is speculation. That would seem to be sufficient for assembly judgment. Your Honor, that's because we cannot and never will be able to go any further. The fact is we will never know. So one interpretation, and we take the interpretation that's most favorable to the plaintiff, the summary judgment. Yes. One interpretation is that they finished any discussion about him and had moved back on to the merits of the case because the mayor didn't say, all right, I call for a vote. What the mayor said, I won't let him speak. That's not my position, but I'll defer to what you want to do. And then the counsel goes on and starts one or two people say, well, maybe he doesn't have anything to add. He's just a citizen. And the next one then goes back to the discussion again. And if one reasonable interpretation of that is that they had finished the discussion because there was never a vote called for and the mayor didn't say I will call for a vote, then if that's a reasonable interpretation, Your Honor, and I understand your point, with all due respect, until the agenda item had passed, there can be no reasonable interpretation that they absolutely wouldn't have. No, there was a reasonable interpretation. And I don't think we're disagreeing here because we never got to a point where it was ended. If they'd moved on and not given him the chance to speak, we would have an issue of fact here. But he was never granted nor denied the right to speak. And it's only at the point where they would be moving on to the next agenda item where you could ever say, Mr. Dene was denied his right to speak on this item, but we never got there. But he was removed for the evening. Even assuming that they came back to the agenda item and invited everyone in the room to participate, he would not have been there. Yeah. I think a reasonable time, place, and manner restriction is all that's required here because the reasonable manner is exclusion for one meeting. This is a continued meeting, certainly, but it's still the same meeting. And so I think that is a reasonable time, place, and manner restriction, Your Honor. What's the effect of the fact that the ruling plus the bar on his participation in the next session was issued by a man who was not under the rules of the Ethics Commission entitled to be conducting that meeting or making those rulings? Do you treat those as ordinary rulings, the same way? Or what weight is given to the fact that they were issued by someone who was not supposed to be presiding? Your Honor, I would disagree with your premise there that he was not supposed to be presiding. And that's where I think the briefs point this out. The counsel is absolutely wrong in his interpretation. He can preside. He can't vote under the laws that were presented there. As if he makes a proper disclosure. When this was all pointed out to him, he chose a different route. But the law is clear and the opinion is the ethics opinion is unclear. It kind of says two different things. But the law is clear that the ethics requirement for this conflict of interest is simply that you disclose it and at worst not vote on it, but it doesn't present you for presiding. What do you mean at worst not vote on it? Is he allowed to vote on it? Not to vote on the merits of the substance, no. But that doesn't mean he can't preside over the meeting and call for a vote and abstain. But he has to reveal his relationship with the airport, right? Yes, and he could have done that. He did more than was required by the ethics opinion by absenting himself. And if Mr. Dene had shown up, I think it would be fair to state in the evening that the new residing chairperson probably could have, you know, he then had the floor and could have gone the other way. There was also a vote that allowed for a majority. It was a reasonable bar. He'd been barred from attending the meeting. And you say that's a reasonable, lawful bar. Yes. So why should he have showed up? I'm not arguing he should have. I will stick with my point. I think it is a reasonable time, place, and manner restriction. Again, that would be speculation just as it would be speculation to assume he would have been excluded, but for his disruptive conduct. Would you agree that one of the reasons he was ejected was that, or the substantial factor in the ejection was that there was no love loss between the mayor and Mr. Dene? Your Honor, absolutely not. Why not? Why is that a question of fact as to whether the reason he was tossed out of there wasn't because of all these procedural rules we're talking about, because the mayor just didn't like this guy because he had a pain in the neck? Two responses, if I may. The first is it's not a material fact because of that. That's not the question. The question was, was that a reason, not whether it's a material fact. It is not a reason that is apparent from any evidence in the record. Not from the fact that he said, throw that clown out? That doesn't indicate any prior disapproval of the person speaking? Not when that person has been there for years and years and has been tolerated for years and years, Your Honor. And again, once he became a clown that night when he wanted to point out the conflict of interest on the part of the speaking, of the presiding officer, that made him a clown? Your Honor, his disruptive comments made any feelings irrelevant, because every speaker That's not the question whether it was irrelevant. The question, Judge Rhodes asked you, was whether that was a factor in the motivation. And I will not concede that, and I will state that it is not relevant because if a speaker must not have any adverse feelings against a person when they throw him out, then probably most speakers could never be thrown out. That can't be the standard that, gee, you dislike this person because of past things, so therefore you are insulated and can never throw this person out even when they're disruptive. The point that has to be focused on is that you have to run a meeting. There are lots of people on a meeting that's going all day.  They're trying to get the work accomplished, and disruptions like this have to be taken care of. That's a very important interest of the government. And to say that a mayor because, and this is just hypothetically, because he may have had other dealings and not cared for this person, and suddenly that person is disruptive, oh, gee, we can't throw him out now because there's been some prior history between the two. That would shut government down in two seconds, Your Honor. I do see I'm out of time. There is a question, a fact, about whether there was going to be a vote. I do not. Where does it say there will be a vote? Can you read me the sentence where the mayor says I'm going to take a vote? You cannot find in the record, Your Honor, any place where it says a vote will not be taken, and the rules state that a vote will be taken on it. On every speaker you take a vote? That is what the rule states, yes. The rule also says that. Well, just let me ask you. Will you read to me the rule that says every time a speaker wants to address the council, there will be a vote of the full council as to whether he will be allowed to speak? Well, the rule will speak for itself. I can't disagree and say it up to the contrary. No, no, it won't speak for itself. I just want to know where to find it. What's the rule? Let's see. It is in my brief in one of the footnotes, Your Honor. Okay. All right. I'll look in your brief. All right. Your time's up. Thank you very much, Your Honors. Thank you. If we could address a clerical point before I concluded. Mr. Ska had brought something to my attention yesterday afternoon that we weren't certain in this case versus the other one. He had a discussion with Mr. Beko about the videotape in that case, and I had previously checked with the clerk of the district court. I've also seen it. You have the tape? Yes. Okay. That is something he brought to my attention. I'd like to ask you the reverse of the question I asked counsel. If there is animosity between the mayor and your client, and that animosity is evident, does that give him a free pass forever just to be disruptive at meetings? Absolutely not. Well, where's the line? The line is clearly dictated by the conduct of the person. If he's addressing a specific issue and a point of order, he has a right and a duty to do that. This was a point of order. He's making a point of order that the person chairing the meeting is out of line and he has failed to fulfill his obligations as he has been directed. If he had just jumped up and started yelling something about the mayor is a fink, I think that would be disruptive. But he didn't say anything about I demand a right to speak until he was being told, we're going to continue this to tonight. And the mayor had not fulfilled his responsibilities at that point. He had not told the public what he was supposed to tell them. Continuation means there's going to be no meeting, and the mayor, with or without a conflict of interest, can't be violating anything by not having a meeting. Do you understand? I mean, so by saying I want to break this off now and we'll be back after dinner. Well, my position is that the mayor doesn't have a right to ask for continuance of a meeting that he's not supposed to be chairing. Now, we disagree on this point, but I believe that he doesn't have a right to chair and conduct the discussion on the airport matter until he has fulfilled his responsibilities in giving that statement to the public. Continuance of the meeting to say let's go have dinner and come back, is that on the merits of the airport? Is that on the merits of anything other than the schedule? Well, I think, again, we're just going around on this. I just believe that that is something that the mayor didn't have a right to do. He didn't have a right to ask for the meeting to be continued. He knew what Diné was going to say. He'd already been told in his ear by the city attorney what Diné was going to say. When you say he didn't have a right, are you saying that he didn't have a right under some Nevada law or city law, or are you saying under the Constitution he didn't have a right? Well, under the Ethics Commission's ruling, he had no right to conduct that. That isn't a constitutional right. That's just the Ethics Commission's ruling, right? Right. But at this point when Diné says I demand the right to speak and he says you demand nothing, I will throw you out of here, somebody throw that clown out of here, that's where the Constitution came into play because Diné was going to point out, and he knew it, he knew what Diné was going to point out to the public, that this guy had violated, again, an Ethics Commission ruling. This wasn't the first time this had happened. And they had just been down at the Ethics Commission. And on this event, the Ethics Commission found that Griffin was wrong and they reprimanded him for it. But he knew what Diné was going to say and he tried to squelch that, and he did. He squelched his free speech by throwing him out of that meeting and calling him a clown. He knew what Diné was going to say. And this is a willful conduct of a public official in violation of the First Amendment. And that's where the First Amendment came into play in this case. Thank you, counsel. The case to be submitted. Thank you both very much.
judges: Reinhardt, Graber, Rhoades